**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| UNITED STATES OF AMERICA , | § | |
| *ex rel* NEAL WARD, and | § | |
| DAVID SIBLEY, | § | |
| | § | |
|     Plaintiffs, | § | |
| | § | |
| vs. | § | C.A. NO. C-05-56 |
| | § | |
| COMMERCIAL METALS COMPANY, | § | |
| | § | |
|     Defendant. | § | |
| | § | |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

On this day came on to be considered Defendant Commercial Metals Company's "Motion to Dismiss" Plaintiffs' Complaint (D.E. 8) in the above-styled action. For the reasons discussed below, Defendant's motion is GRANTED.

**I.    JURISDICTION**

This Court has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732(a).

**II.   BACKGROUND**

On February 4, 2005, Plaintiffs Neal Ward and David Sibley ("Plaintiffs") filed the above-styled qui tam action under seal in this Court on behalf of the United States of America pursuant to the Federal False Claims Act, 31 U.S.C. §§ 3729-3730. In their Complaint, Plaintiffs alleged that Defendant Commercial Metals Company ("Defendant") had knowingly made or used "a false record or statement to conceal, avoid, or decease an obligation to pay or

transmit money or property to the [United States of America]" in violation of 31 U.S.C. § 3729(a)(7).  (See Pls.' Compl. at ¶ 11.) In particular, Plaintiffs alleged that, in 1994, the United States District Court for the Southern District of Texas entered an approximately $7 million dollar judgment in favor of the United States against CMC Oil Company, a subsidiary of the Defendant. (Pls.' Compl. at ¶ 6.)  Plaintiffs claimed that, in order to avoid the payment of the court judgment, the Defendant employs a system of "alter egos" whereby the "alter ego(s) are kept judgment proof while cash is sent to [the Defendant]."  (Pls.' Compl. at ¶¶ 4-5.) In other words, Plaintiffs allege that Defendant "had a practice of sweeping all assets out of its subsidiaries on a daily basis so that they never had any money" to pay the judgment to the United States.  (Pls.' Compl. at ¶ 10.)  Plaintiffs sought damages from the Defendant as a result of the alleged violation.

In accordance with the statute, the Plaintiffs' Complaint was initially filed and kept under seal to allow the United States time to opt to intervene in the suit.  See 31 U.S.C. § 3730(b)(2).  The United States did not intervene in the suit within the statutory period, however, and on January 30, 2007, the Plaintiffs filed a "Motion to Unseal" the Complaint and allow for service on the Defendant.  (D.E. 1.)  That same day, the Court held a hearing on Plaintiffs' motion, during which the Court granted the Motion to Unseal.  Following service of process, Defendant filed a "Motion to Dismiss" (D.E. 8) the Plaintiffs' Complaint on several grounds,

-2-

including that the Plaintiffs were subject to the jurisdictional bar of 31 U.S.C. § 3730(e)(4) because their qui tam action was based on publicly disclosed transactions and allegations for which Plaintiffs were not the "original source."[1]  (D.E. 8 at 11-16.)

In response to Defendant's Motion to Dismiss, Plaintiffs filed a "Motion to Add a Party as Plaintiff" (D.E. 16), in which they sought to add Mr. David Peden ("Mr. Peden") as a plaintiff in the case.  Plaintiffs argued that Mr. Peden's presence as a plaintiff would cure the jurisdictional defect claimed by the Defendant.  The

---

[1] Defendant also argued that this case must be dismissed because Plaintiffs failed to allege that Defendant "actually made a false statement or submitted a false record *to the United States* to avoid paying the 1994 CMC Oil judgment."  (See Def.'s Mot. to Dismiss at 11.)  In other words, Defendant argues that the so-called "reverse false claims" provision of 31 U.S.C. § 3729(a)(7), requires proof that a false claim or record was *presented to the United States*.  Defendant cites numerous cases in support of this proposition, including: US ex rel Doe v. Dow Chem. Co., 343 F.3d 325, 329 (5th Cir. 2003); US ex rel Bain v. Georgia Gulf Corp., 386 F.3d 648 (5th Cir. 2004); US ex rel Russell v. Epic Healthcare Mgmt., 193 F.3d 304, 308 (5th Cir. 1999); US ex rel Thompson v. Columbia/HCA Healthcare Corp., 125 F.3d 899, 903 (5th Cir. 1997).  In none of these cases, however, does the Fifth Circuit ever hold that presentment to the government is a requirement under the reverse claims provision. In fact, several courts that have addressed this issue hold that, under the language of the statute, presentment to the government is *not* required for reverse false claims.  See US ex rel. Bahrani v. Conagra, Inc., 465 F.3d 1189 (10th Cir. 2006) ("nothing in the language of § 3729(a)(7) indicates that presentment to the government is required"); United States. ex rel. Koch v. Koch Indus., 57 F.Supp.2d 1122, 1144 (N.D. Okla. 1999) ("The bad act under (a)(1) is the presenting of a false claim.  The bad act under (a)(7) is the making or using of a false statement or record.  There is no 'presentment' language in § 3729(a)(7)"). The Court need not address this issue, however, as Plaintiffs' lawsuit must be dismissed on jurisdictional grounds.

Defendant opposed the addition of Mr. Peden as a plaintiff, arguing among other things that (1) the False Claims Act does not allow substitution of plaintiffs and (2) the late addition of Mr. Peden to the case would prejudice the Defendant by unfairly allowing Mr. Peden to claim tolling of the statute of limitations from the date of Plaintiffs' Complaint.  (IPTC Trans. at 6-7.)[2]

On March 7, 2007, the Court conducted an Initial Pretrial Conference in the case.  At the Conference, the Court denied the Plaintiffs' motion to add Mr. Peden as a plaintiff, and carried the Defendant's Motion to Dismiss forward for 45-days to allow the parties to conduct limited discovery on the issue of subject matter jurisdiction.  (D.E. 17.)  The Court also advised the parties that, following discovery, it would convert the Defendant's Motion to Dismiss into a motion for summary judgment if Plaintiffs attached evidence in support of their response.  (See IPTC Trans. at 9.)

On April 23, 2007, Plaintiffs filed a Response in opposition to the Defendant's Motion to Dismiss, filing two depositions as exhibits.[3]  (D.E. 22, 23, 24.)  On April 30, 2007, Defendant filed

---

[2] The transcript of the Initial Pretrial Conference is available at Docket Entry 21, and is also reprinted as Exhibit D to Defendant's "Reply Memorandum" (D.E. 28) in Support of its Motion to Dismiss.

[3] Plaintiffs submitted two deposition transcripts as evidence in support of their response to Defendant's motion to dismiss.  (D.E. 23, 24.)  On April 24, 2007, however, the Court entered an Order striking the depositions (D.E. 27) because Plaintiffs filed the depositions as separate docket entries, rather than as attachments to Plaintiffs' response, in contravention of this Court's General Order, paragraph VII.

-4-

a "Reply Memorandum" (D.E. 28) in support of its motion.  Finally,
on May 5, 2007, Plaintiffs filed a "Reply Brief" (D.E. 31) opposing
the motion.   Because the Plaintiffs elected to present the Court
with evidence outside the scope of the pleadings and thereby
elected to proceed under the summary judgment standard of Rule 56,
the Court treats the Motion to Dismiss as a motion for summary
judgment pursuant to its Order at the Initial Pretrial Conference.[4]

## III. DISCUSSION

### A.    Summary Judgment Standard

Federal Rule of Civil Procedure 56 states that summary
judgment is appropriate if the "pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to any
material fact."   Fed. R. Civ. P. 56(c).   The substantive law
identifies which facts are "material."   Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 248 (1986); see also Ellison v. Software

---

(D.E. 18 ¶ VII, "The parties may not file 'supplemental
pleadings.'")   Despite filing additional briefing, Plaintiffs
never properly re-filed the deposition transcripts.   The
Defendant, however, did attach excerpts of these same depositions
in its reply brief (D.E. 24).   In the interests of justice, the
Court will consider the entire deposition transcripts, as filed
by the Plaintiffs, as if they had not been struck.

[4] Fed. R. Civ. P. 12(b) (stating that if, on a motion under
Rule 12(b)(6), "matters outside the pleading are presented to and
not excluded by the court, the motion shall be treated as one for
summary judgment and disposed of as provided in Rule 56").

Spectrum, Inc., 85 F.3d 187, 189 (5th Cir. 1996).  A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; Judwin Props., Inc. v. U.S. Fire Ins. Co., 973 F.2d 432, 435 (5th Cir. 1992).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for [his] motion, and identifying those portions of [the record] which [he] believes demonstrate the absence of a genuine issue of material fact." See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has carried his burden, the nonmovant "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." First Nat'l Bank of Arizona v. Cities Service Co., 391 U.S. 253, 270 (1968); see also Schaefer v. Gulf Coast Reg'l Blood Ctr., 10 F.3d 327, 330 (5th Cir. 1994) (stating that the nonmoving party must "produce affirmative and specific facts" demonstrating a genuine issue).  The nonmovant's burden is not satisfied by conclusory allegations, unsubstantiated assertions, or some metaphysical doubt as to the material facts. Willis v. Roche Biomedical Labs., Inc., 61 F.3d 313, 315 (5th Cir. 1995); see also Brown v. Houston, 337 F.3d 539, 541 (5th Cir. 2003) (stating that "improbable inferences and unsupported speculation are not sufficient to [avoid] summary judgment").  Similarly, the "mere existence of a scintilla of evidence in support of the

-6-

[nonmovant's] position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for [that party]." <u>Doe on Behalf of Doe v. Dallas Indep. Sch. Dist.</u>, 153 F.3d 211, 215 (5th Cir. 1998).

When the parties have submitted evidence of conflicting facts, however, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Willis</u>, 61 F.3d at 315. Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the nonmoving party, no reasonable jury could return a verdict for that party. <u>See</u>, <u>e.g.</u>, <u>Rubinstein v. Adm'rs of the Tulane Educ. Fund</u>, 218 F.3d 392, 399 (5th Cir. 2000). "That the movant appears more likely to prevail at trial is no reason to grant summary judgment; it is not the province of the court on a motion for summary judgment to weigh the evidence, assess its probative value, or decide factual issues." <u>Byrd v. Roadway Exp., Inc.</u>, 687 F.2d 85, 87 (5th Cir. 1982); <u>Aubrey v. Sch. Bd. of Lafayette</u>, 92 F.3d 316, 318 (5th Cir. 1996).

**B.   The False Claims Act, 31 U.S.C. § 3729**

The Federal False Claims Act ("FCA") provides, in relevant part, that "[a]ny person who . . . knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government . . . is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000,

–7–

plus 3 times the amount of damages which the Government sustains because of the act of that person . . . . ."   31 U.S.C. § 3729(a)(7).[5]  Under the statute, a private person may bring a civil action to enforce the provisions of the statute.   31 U.S.C. § 3730(b)(1)-(3); see also U.S. ex rel. Reagan v. East Texas Med. Ctr. Reg. Healthcare Sys., 384 F.3d 168, 173 (5th Cir. 2004) (quoting U.S. ex rel. Laird v. Lockheed Martin Eng'g & Sci. Servs. Co., 336 F.3d 346, 351 (5th Cir. 2003)) ("In general terms the FCA permits certain suits by private parties on behalf of the United States against anyone submitting a false claim to the government"). A suit by a private person in the name of the government is known as a "qui tam" action.   The FCA, however, explicitly bars courts from exercising subject matter jurisdiction over qui tam actions based on "public disclosures."   The statute provides:

> [n]o court shall have jurisdiction over an action under
> this section based upon the public disclosure of
> allegations or transactions in a criminal, civil, or
> administrative hearing, in a congressional,
> administrative, or Government Accounting Office report,
> hearing, audit, or investigation, or from the news media,
> unless the action is brought by the Attorney General or
> the person bringing the action is an original source of
> the information.

31 U.S.C. § 3730(e)(4)(A).   The purpose of this jurisdictional bar

---

[5] This section is known as the "reverse false claims" section, because unlike the other FCA sections, the "defendant's action does not result in improper payment by the government to the defendant, but instead results in no payment to the government when a payment is obligated."   U.S. ex rel. Bain v. Georgia Gulf Corp., 386 F.3d 648, 653 (5th Cir. 2004); U.S. ex rel. Doe v. Dow Chemical Co., 343 F.3d 325, 329 (5th Cir. 2003).

is to prevent "parasitic lawsuits based upon publicly disclosed information in which would-be relators[6] seek remuneration although they contributed nothing to the exposure of the fraud. . . . [and] to preclude qui tam suits based on information that would have been equally available to strangers to the fraud transaction had they chosen to look for it as it was to the relator." See, e.g., U.S. ex rel. Kreindler & Kreindler v. United Technologies Corp., 985 F.2d 1148, 1157 (2d Cir. 1993); see also Reagan, 384 F.3d at 173; Laird, 336 F.3d at 351 (citing United States ex rel. Rabushka v. Crane Co., 40 F.3d 1509, 1511 (8th Cir. 1994)).   In deciding whether this jurisdictional bar applies, a court must "consider three questions: (1) whether there has been a 'public disclosure' of allegations or transactions, (2) whether the qui tam action is 'based upon' such publicly disclosed allegations, and (3) if so, whether the relator is the 'original source' of the information." Reagan, 384 F.3d at 173 (quoting Laird, 336 F.3d at 352) see also Federal Recovery Services, Inc. v. Crescent City E.M.S., 72 F.3d 447, 451 (5th Cir. 1995)).   Defendant contends that, under this three-part test, the Court lacks subject matter jurisdiction over this action.   The Court will analyze each of these elements below.

---

[6] A private person bringing a qui tam action is frequently referred to as a "relator."  The parties in this case use both the term "relators" and the term "plaintiffs" in their pleadings to describe Mr. Sibley and Mr. Ward.  For the purposes of clarity, the Court will use the term "Plaintiffs."

### 1.    Public Disclosure

The first prong of the jurisdictional test asks whether there has been a "public disclosure" of "allegations or transactions." In several cases, courts have addressed the question of what "allegations or transactions" must be disclosed in order for the jurisdictional bar to apply.  Courts have generally concluded that the phrase "allegations or transactions" refers to both: (1) the allegation of fraud *itself*, or (2) the material facts that underlie the allegation of fraud.  See U.S. ex rel. Springfield Terminal Ry. Co. v. Quinn, 14 F.3d 645, 654 (D.C. Cir. 1994).  If either the allegation of fraud or material facts that underlie it are in the public domain, the jurisdictional bar will generally apply.  Id.; see also, e.g., U.S. ex rel. Jones v. Horizon Healthcare Corp., 160 F.3d 326, 331 (6th Cir. 1998); U.S. ex rel. Dunleavy v. County of Delaware, 123 F.3d 734, 741 (3d Cir. 1997).

Several Circuits illustrate this rule through a mathematical equation: X + Y = Z.  Under this equation: "X (misrepresented state of facts) + Y (true state of facts) = Z (fraud).  X and Y represent the material elements of fraud." U.S. ex rel. Findley v. FPC-Boron Employees' Club, 105 F.3d 675, 687 (D.C. Cir. 1997).  One court explained the illustration as follows:

> In terms of the mathematical illustration, when X by itself is in the public domain, and its presence is essential but not sufficient to suggest fraud, the public fisc only suffers when the whistle-blower's suit is banned.  When X and Y surface publicly, or when Z is broadcast, however, there is little need for qui tam

actions, which would tend to be suits that the government presumably has chosen not to pursue or which might decrease the government's recovery in suits it has chosen to pursue. . . . We believe that Congress . . . create[d] a standard under which qui tam actions are barred only when enough information exists in the public domain to expose the fraudulent transaction (the combination of X and Y), or the allegation of fraud (Z).  When either of these conditions is satisfied, the government itself presumably can bring an action under the FCA and there is no place in the enforcement scheme for qui tam suits.

Springfield Terminal, 14 F.3d at 654.  Thus, where the publicly

disclosed information is sufficient to create an inference of fraud

or "set government investigators on the trail of fraud," the

jurisdictional bar will usually apply.  See Id. at 655.

     With respect to the requirement that the allegations or

transactions be "publicly disclosed," the statute indicates that a

public disclosure occurs when the allegations or transactions are

disclosed in criminal, civil, or administrative hearings.  See 31

U.S.C. § 3730(e)(4)(A).  Pursuant to this statutory language, the

Fifth Circuit has held that:

     Any information disclosed through civil litigation and on file with the clerk's office should be considered a public disclosure of allegations in a civil hearing for the purposes of section § 3730(e)(4)(A) and this includes civil complaints.

Id. (citations omitted); see also Fed. Recovery Serv., Inc., 72

F.3d at 450 (quoting United States ex rel. Siller v. Becton

Dickinson & Co., 21 F.3d 1339, 1350 (4th Cir. 1994)); Springfield

Terminal, 14 F.3d at 652 (stating that it "is clear from statutory

context that the term 'hearing' was intended to apply in a broad

context of legal proceedings under § 3730(e)(4)(A)").  Therefore,

"[i]nformation gleaned in litigation and on file in the clerk's office" is publicly disclosed within the meaning of the statute. <u>Kreindler</u>, 985 F.2d at 1158; <u>see</u> <u>also</u> <u>U.S. ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Insurance Co.</u>, 944 F.2d 1149, 1155-56 (3d Cir. 1991).

Viewing the evidence in the light most favorable to the Plaintiffs in this case, the Court concludes that there has been a public disclosure of the allegation and transactions which are at the heart of this qui tam action.  According to their Complaint, the transaction on which Plaintiffs' allegation of fraud is based is Defendant's use of system of "alter egos" whereby the Defendant sweeps all assets out of its subsidiaries on a daily basis so that its subsidiary, CMC Oil, never had any money to pay its $7 million dollar judgment to the United States.  (See Pls.' Compl. ¶¶ 5-10.) This transaction, however, was publicly disclosed in the pleadings, testimony, and findings of fact made in the case of <u>United States of America v. Harrop Construction Co., et al.</u>, Civil Action 96-38 (the "<u>Harrop</u> case") which was filed in the Southern District of Texas and heard before Chief Judge Hayden Head.

In the <u>Harrop</u> case, entities named Harrop Construction Company ("Harrop Construction") and CMC Steel Fabricators (a subsidiary of the Defendant) brought various tort and breach of contract claims against one another.  (See Def.'s Ex. ("DEX") B at 1-4.)  During the course of the litigation, Harrop Construction joined Defendant Commercial Metals as a third-party defendant in the case, claiming

-12-

that CMC Steel Fabricator's corporate veil should be pierced and Defendant Commercial Metals should be held liable for the acts of its subsidiary.  (DEX B at 20.)  Defendant argued that it was not liable for the acts of its subsidiary.  (See DEX A at 1.)  In attempting to pierce the corporate veil, Harrop Construction disclosed the exact set of transactions which now form the basis for this action.  In particular, Harrop Construction alleged:

> Commercial Metals employs a "sweeping mechanism" to wipe out all of the funds in any bank account maintained in the name of its subsidiaries. . . . Unfortunately . . . Commercial Metals' vacuum only works one way.  It is a documented facts [*sic*] that when the "going gets tough," Commercial metals bails out and leaves its empty shell subsidiary company "holding the bag."  A recent example is the judgment against CMC Oil, a wholly owned subsidiary of Commercial Metals.  In November 1994, the United States District Court for the Southern District of Texas entered a final order requiring restitution by CMC Oil of approximately 6,000,000.00. . . . Instead of putting money from its bank account into that of CMC Oil to pay this judgment, Commercial Metals left the judgment in place against CMC Oil, a company with no assets and whose profits were daily taken by Commercial Metals out of its bank account and into Commercial Metals own bank account, leaving CMC Oil unable to pay this judgment . . . Who has [*sic*] left holding the bag in that case?  The United States of America!"

(DEX A at 20-22.)  In support of this allegation in the Harrop case, Harrop construction attached the deposition of Milton Davis, a corporate representative of Defendant, who testified regarding (1) the existence of the outstanding judgment against CMC Oil in favor of the United States, (2) the fact that the judgment had not yet been paid, and (3) the Defendant's practice of keeping its subsidiaries' bank accounts empty.  (Davis Depo. at 57-60, 106-07.)

-13-

Following a bench trial, Judge Head accepted Harrop Construction's argument that the corporate veil should be pierced, finding in relevant part that:

> The subsidiary operates grossly undercapitalized, as do all of its "affiliates." Each night, positive revenues are swept from the bank accounts of Steel Fabricators plant sites and placed under the control of Commercial Metals Company, protecting CMC from any indebtedness that might be imposed upon the operating plant sites. . . . CMC has at least once used this corporate arrangement to its advantage when a judgment of the Houston Division of this Court was entered against another subsidiary of CMC. It has gone unpaid.

(DEX B at 22-23.) Thus, the same transaction that forms the basis of the present qui tam action (*i.e.*, that Defendant maintains a facade that CMC Oil is unable to pay the judgment when in fact Defendant daily sweeps out all assets from its subsidiaries such as CMC Oil to keep them judgment-proof) was disclosed in the Harrop litigation. That disclosure was a "public disclosure" because the Harrop pleadings, depositions, and findings of fact are all on file with the Clerk of Court and available to the public as well as the Plaintiffs through the Court's electronic case filing system. Therefore, the first element of the public disclosure bar is met.

Plaintiffs implicitly admit in their Response that the material elements underlying their fraud allegation were disclosed in the Harrop litigation. (Pls.' Response at ¶ 9.) Nonetheless, Plaintiffs attempt to avoid the jurisdictional bar by arguing that the idea to use these facts to pursue a cause of action under the False Claims Act is Plaintiffs' own original idea. In particular,

Plaintiffs argue:

> Yes, the fact that Commercial Metals Company uses alter egos was established federal court.  David Peden established this after great effort.  Judge Head ruled this.  Yes, the existence of the judgment at issue is a matter of public record.  But, no one to Plaintiffs' knowledge ever had the insight to take these facts and make an allegation under the Federal False Claims Act.  This insight was new and unprecedented.

(Pls.' Response at ¶ 9.)  This argument is unpersuasive, however, because courts have held that the precise allegation of fraud (or the fact that the fraud might trigger a cause of action under the False Claims Act) need not be publicly disclosed if the essential facts or transaction on which it is based has been disclosed.  <u>See</u> <u>Springfield Terminal</u>, 14 F.3d at 654 (a qui tam action is barred when *either* the fraudulent transaction *or* the allegation of fraud is publicly disclosed).  As one Circuit explained:

> A relator's ability to recognize the legal consequences of a publicly disclosed fraudulent transaction does not alter the fact that the material elements of the violation already have been publicly disclosed. The relator must possess substantive information about the particular fraud, rather than merely background information which enables a putative relator to understand the significance of a publicly disclosed transaction or allegation.  If a relator merely uses his or her unique expertise or training to conclude that the material elements already in the public domain constitute a false claim, then a qui tam action cannot proceed.

<u>Findley</u>, 105 F.3d at 688 (citing <u>U.S. ex rel. Stinson, Lyons,</u> <u>Gerlin & Bustamante, P.A. v. Prudential Ins. Co.</u>, 944 F.2d 1149, 1160 (3d Cir. 1991)); <u>A-1 Ambulance Service, Inc. v. California</u>, 202 F.3d 1238, 1243, 1245 (9th Cir. 2000) ("the substance of the

disclosure need not contain an explicit allegation of fraud; the jurisdictional bar is raised so long as the material elements of the allegedly fraudulent transaction are disclosed in the public domain"); see also U.S. ex rel Fine v. Sandia Corp. 70 F.3d 568, 572 (10th Cir. 1995); Walburn v. Lockheed Martin Corp., 431 F.3d 966, 975 (6th Cir. 2005).  The fact that Plaintiffs were the first to realize the possible legal significance of the underlying facts is therefore irrelevant.

### 2.   Based Upon a Public Disclosure

The Court next considers whether the *qui tam* action is "based upon" the publicly disclosed allegations.  The Fifth Circuit has held that "[a]n FCA qui tam action even *partly* based upon public allegations or transactions is nonetheless 'based upon' such allegations or transactions."  Reagan, 384 F.3d 176 (emphasis supplied); see also Fed. Recovery Serv., 72 F.3d at 451 (quoting U.S. ex rel. Precision Co. v. Koch Indus., Inc., 971 F.2d 548, 552 (10th Cir. 1992)) (stating that "Congress chose not to insert the adverb 'solely' before 'based upon,' yet to hold as FRS urges would accomplish exactly that and alter the statute's plain meaning").

Viewing the evidence in the light most favorable to the Plaintiffs, there is no question that Plaintiffs' qui tam action is more than "partly" based on the publicly disclosed allegations and transactions from the Harrop case.  Plaintiffs' Complaint reveals its dependence on the Harrop litigation on its face, quoting

extensively from the case proceedings, testimony, and findings of
fact. (Pls.' Compl. At ¶¶ 7-10.) Moreover, Plaintiffs confirmed
their reliance on the <u>Harrop</u> case at their depositions. When asked
about where he learned about the facts underlying the qui tam
action, Plaintiff David Sibley testified:

> **Q.** . . . [W]ere it not for those lawsuits, you wouldn't
> have know about this?
>
> **A.** Right. That I – I don't – won't predict what might
> have happened but that is the source that I learned those
> facts from.

(Sibley Depo. at 34.) Plaintiff Sibley further testified:

> **Q.** Okay.  It was from your review of pleadings or
> deposition transcripts or attending hearings that you
> learned of this?
> . . .
> **A.** And reading Judge Head's ruling.  Which is similar to
> those things . . . We corroborated some things by looking
> at annual reports, looking at SEC statements.  Things
> like that.  But the initial —- the initial learning was
> from the <u>Harrop</u> case.

(Sibley Depo. at 36.) Plaintiff Sibley further agreed at his
deposition that it was fair to say that all the testimony and
transcripts he provided to the United States pursuant to statute in
this case, he learned or obtained through the <u>Harrop</u> litigation.
(<u>See</u> Sibley Depo. at 43-44.)

Plaintiff Sibley conceded that it was the lead attorney for
Harrop Construction in the <u>Harrop</u> case, Mr. Peden, who uncovered
and developed most of the underlying facts which form the basis of
this qui tam action.  With reference Mr. Peden, Plaintiff Sibley
testified that: "[Mr. Peden] found those facts and presented them

-17-

in a form that we discovered through the <u>Harrop</u> case." (Sibley

Depo. at 43.) Plaintiff Sibley also testified:

> **Q.** Based on what you said to the Court in this motion, is
> it fair to say that this qui tam lawsuit is based on
> facts that Mr. Peden allegedly uncovered in the Harrop
> litigation?
>
> **A.** Right. I think you asked me who came up with the
> idea, not who –– I agree that he presented those facts to
> the Federal Court and –– but the idea of the qui tam suit
> was not his idea.
>
> **Q.** Okay he – fair to say he uncovered the facts. But you
> are the one who applied the –– the legal analysis of
> figuring out this could be brought as a qui tam claim?
>
> **A.** Right. And I did that without talking to him. I
> hadn't met him at that time. But he presented those
> facts to the Federal Court which I learned through Judge
> Head's ruling and some other papers in that case.

(Sibley Depo. at 40.) In sum, the undisputed evidence shows that

Plaintiffs based their qui tam action on the public disclosures

from the <u>Harrop</u> litigation. Therefore, the second element of the

public disclosure bar is met.

### 3. Original Source Exception

Where there has been a public disclosure, and a plaintiff's

complaint is based upon that disclosure, a court will not have

jurisdiction *unless* the plaintiff "is the 'original source' of the

information." <u>Reagan</u>, 384 F.3d at 176-177 (citing <u>Laird</u>, 336 F.3d

at 352). According to the Fifth Circuit:

> The 'original source' exception explicitly requires the
> satisfaction of a two-part test: (1) the relator must
> demonstrate that he or she has 'direct and independent
> knowledge of the information on which the allegations are
> based' and (2) the relator must demonstrate that he or

-18-

> she has 'voluntarily provided the information to the
> Government before filing' his or her qui tam action.

Id.; Laird, 336 F.3d at 352 (quoting 31 U.S.C. § 3730(e)(4)(B)).
"Under this standard, the relator is not required to have direct
and independent knowledge of each false claim alleged in his
complaint" as long as the relator possesses "direct and independent
knowledge of the information on which the publicly disclosed
allegations are based." Reagan, 384 F.3d at 177; Laird, 336 F.3d
at 352-53, 355. "The plain meaning of the term 'direct' requires
knowledge derived from the source without interruption or gained by
the relator's own efforts rather than learned second-hand through
the efforts of others." Reagan, 384 F.3d at 177; Laird, 336 F.3d
at 355. "The relator's knowledge is considered independent if it
is not derived from the public disclosure." Reagan, 384 F.3d 177;
see also Laird, 336 F.3d at 355 (citing Findley, 105 F.3d at 690;
Minnesota Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp.,
276 F.3d 1032, 1048-49 (8th Cir. 2002); U.S. ex rel. McKenzie v.
BellSouth Tele., Inc., 123 F.3d 935, 941 (6th Cir. 1997)).

Plaintiffs do not contend that they are "original sources" in
this case. Indeed, Plaintiffs state that "[t]here is no original
source issue in this case at this time." (Pls.' Reply at 3-4.) In
any case, the Plaintiffs have failed to present any evidence[7] that

---

[7] Plaintiffs, as the parties invoking federal jurisdiction,
have the burden of proving its existence. St. Paul Reinsurance
Co., Ltd. v. Greenberg, 134 F.3d 1250, 1253 (5th Cir. 1998)
(stating that "[t]he burden of establishing subject matter
jurisdiction in federal court rests on the party seeking to

they knew of the Defendant's alleged practice of using alter egos to avoid payment of the judgment through Plaintiffs' own efforts rather than through the second-hand efforts of others or the Harrop litigation.  Plaintiffs were not attorneys, witnesses, parties, or participants in the Harrop litigation.  (See Sibley Depo. at 35.) Plaintiffs do not provide any evidence that they uncovered some additional compelling fact, or otherwise helped put a government agency 'on the trail' of fraud, where that fraud might have otherwise gone unnoticed.  See Reagan, 384 F.3d 179.  Again, Plaintiffs claim only that they made the original contribution of realizing that the facts disclosed in the Harrop litigation might give rise to a cause of action under the False Claims Act.  (See Sibley Depo. at 42-43.)  This is insufficient to qualify as an original source under the statute.  Therefore, the third element of the public disclosure bar has been met, and the Court is without jurisdiction over this qui tam action.  Defendant's Motion to Dismiss is accordingly GRANTED.

---

invoke it").

**IV.   CONCLUSION**

For the reasons discussed above, Defendant's "Motion to Dismiss" (D.E. 8) is GRANTED.

SIGNED and ENTERED this 9th day of May, 2007.

_____
Janis Graham Jack
United States District Judge